United States District Court
Southern District of Texas
**ENTERED**
July 12, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
LAREDO DIVISION

| | | |
|---|---|---|
| MARYELL CAVAZOS | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 5:23-CV-110 |
| | § | |
| A & T BROTHERS, INC. *et al.* | § | |

## REPORT AND RECOMMENDATION OF
## THE UNITED STATES MAGISTRATE JUDGE

Pending before the Court is Plaintiff Maryell Cavazos' motion for default judgment against Defendants A & T Brothers Inc., BHP Bros. Inc., and Gurmail Singh. (Dkt. No. 14). On March 5, 2024, United States District Judge Marina Garcia Marmolejo referred Plaintiff's motion to the Undersigned for a report and recommendation, (Dkt. No. 15), and on April 2, 2024, an evidentiary hearing on damages was held before the Undersigned. (Min. Ent. on Apr. 2, 2024).

After duly considering the evidence and testimony put forth at the evidentiary hearing, the record, and relevant authorities, the Undersigned **RECOMMENDS** Plaintiff's motion, (Dkt. No. 14), be **GRANTED** in part, **DENIED** in part, and Plaintiff's requested damages, (Dkt. No. 18), be **MODIFIED**.

## I. BACKGROUND AND PROCEDURAL HISTORY

On October 4, 2023, Plaintiff Maryell Cavazos filed her original complaint against Defendants A & T Brothers Inc. ("A & T"), BHP Bros. Inc. ("BHP"), and Gurmail Singh ("Singh") (collectively, "Defendants"). (Dkt. No. 1).

In her original complaint, Plaintiff alleges on June 7, 2022, she sustained personal injuries after a Kenworth truck collided with her sedan. (*Id.* at 2–4).

1

According to Plaintiff, the driver of the Kenworth truck, Singh, unsafely pulled away from a parked position and struck Plaintiff's sedan as she passed. (*Id*. at 2–3). Singh is an employee of A & T and BHP, the owners of the Kenworth truck. (*Id*. at 3).

On November 1, 2023, Plaintiff filed her first amended complaint. (Dkt. No. 6). Attached to her first amended complaint is a Texas Peace Officer's Crash Report detailing the collision. (Dkt. Nos. 6 and 6-2). Defendants did not respond to either of Plaintiff's complaints, and on January 23, 2024, Plaintiff filed a request for entry of default. (Dkt. No. 8). On February 9, 2024, the Clerk of Court entered default against Defendants. (Dkt. No. 12).

On February 20, 2024, Plaintiff filed the instant motion for default judgment, (Dkt. No. 14), and on March 5, 2024, United States District Judge Marina Garcia Marmolejo referred the motion to the Undersigned for a report and recommendation. (Dkt. No. 15). On March 26, 2024, Plaintiff filed an amended default judgment, (Dkt. No. 18). In her amended default judgment, (*id*.), Plaintiff no longer seeks prejudgment interest, attorney's fees, courts costs, and postjudgment interest.

On April 2, 2024, an evidentiary hearing ("the hearing") was held before the Undersigned. (Min. Ent. on Apr. 2, 2024). At the hearing, Plaintiff confirmed—as her amended default judgment, (Dkt. No. 18), reflects—she no longer seeks prejudgment interest, attorney's fees, court costs and postjudgment interest. (Hrg. at 9:07–9:08). Plaintiff further confirmed she revised the amount of damages requested from $2,025,784.99 to $1,769,915.00. (*Id*.). As to the $1,769,915.00 sum, Plaintiff seeks a final default judgment against Defendants awarding:

(1) Medical care expenses incurred in the past in the amount of **$19,915.00.**

(2) Medical care expenses that, in reasonable probability, Maryell Cavazos will incur in the future in the amount of **$250,000.00**.

(3) Physical pain sustained in the past in the amount of **$50,000.00**.

(4) Physical pain that, in reasonable probability, Maryell Cavazos will sustain in the future in the amount of **$250,000.00**.

(5) Mental anguish sustained in the past in the amount of **$50,000.00**.

(6) Mental anguish that, in reasonable probability, Maryell Cavazos will sustain in the future in the amount of **$250,000.00**.

(7) Loss of earning capacity sustained in the past in the amount of **$50,000.00**.

(8) Loss of earning capacity that, in all reasonable probability, Maryell Cavazos will sustain in the future in the amount of **$250,000.00**.

(9) Physical impairment sustained in the past in the amount of **$50,000.00**.

(10) Physical impairment that, in reasonable probability, Maryell Cavazos will incur in the future in the amount of **$250,000.00**.

(11) Disfigurement sustained in the past in the amount of **$50,000.00**.

(12) Disfigurement that, in reasonable probability, Maryell Cavazos will incur in the future in the amount of **$250,000.00.**

(13) Exemplary damages against the Defendants in the sum of **$100,000.00.**

(Dkt. No. 18). At the hearing, however, Plaintiff presented unauthenticated evidence[1],

---

[1] In Fed. R. Civ. P. 60(b) proceedings challenging a final judgment, courts have sustained objections to evidence where Plaintiff failed to provide any affidavit or sworn declaration authenticating exhibits. *Allied Petroleum, Inc. v. Gradney*, No. 3:16-CV-1453-B, 2018 WL 2321897 *2 (N.D. Tex. May 2, 2018) (Ramirez, J.), *R. & R. adopted*, No. 3:16-CV-1453-B, 2018 WL 2317795 (N.D. Tex. May 22, 2018).

unredacted and unmarked exhibits[2], and failed to present expert witness testimony as to the necessity and reasonableness of medical expenses. [3] (Min. Ent. on Apr. 2, 2024; *see also* Dkt. No. 19). "Given the disfavor with which default judgments are viewed and the need to properly support an award of damages with competent evidence," the Court ordered Plaintiff, if she chose to do so, to supplement the evidence by April 16, 2024. *Isenberg v. Chase Bank USA, N.A.*, No. 4:07-CV-096-Y, 2009 WL 10705208 at *2 (N.D. Tex. Apr. 8, 2009) (citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979); (*see also* Dkt. No. 19).

On April 16, 2024, Plaintiff filed authenticated evidence, conforming exhibit and witness lists, as well as an advisory to the Court. (Dkt. Nos. 20, 21, 22). In the advisory, Plaintiff requested the Court allow her 30 additional days to depose an expert witness regarding the necessity and reasonableness of her medical expenses and file the responses with the Court. (*Id.*). The Court ordered Plaintiff to file the responses, including transcripts of expert witness testimony, by June 3, 2024. (Dkt. No. 23).

In response, on June 3, 2024, Plaintiff filed the oral deposition transcript of Melissa Guerra, Doctor of Chiropractic ("Dr. Guerra"). (Dkt. No. 25). The deposition took place on May 28, 2024. (Dkt. No. 25-1 at 1).

---

[2] Pursuant to U.S. District Judge Garcia Marmolejo's Civil Court Procedures: All exhibits must be pre-marked and exchanged among counsel at the time the Pretrial Order is filed, unless a later date is agreed to by counsel. Generally, in civil cases, exhibits that have not been disclosed to opposing counsel prior to trial will not be received in evidence. The offering party shall mark its name, the case number, and the exhibit number on each exhibit to be offered. Any exhibits containing personal data identifiers must comply with S.D. Texas General Order #2004-11. J. Garcia Marmolejo Civ. Ct. P. 11(A).

[3] To recover for past medical expenses, a plaintiff must prove that the expenses were necessary to treat the injury, were reasonable in amount and the expenses were paid or incurred by or on behalf of the plaintiff. Tex. Civ. Prac. & Rem. Code § 41.0105; *Texarkana Mem'l Hosp., Inc. v. Murdock*, 946 S.W.2d 836, 839–40 (Tex. 1997).

## II. LEGAL STANDARD

Under Fifth Circuit law, there are three steps to obtaining a default judgment: (1) default, (2) entry of default, and (3) default judgment. *N.Y. Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). Here, all Defendants have defaulted by failing to file any responsive pleadings or otherwise appear in this case. Moreover, entry of default against Defendants has been made by the Clerk of Court. (Dkt. No. 12). The only remaining question is whether the third step—entry of default judgment—is appropriate.

Federal Rule of Civil Procedure 55(b) authorizes entry of default judgment with court approval. It is a drastic remedy, resorted to only in extreme situations. *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). Nevertheless, default judgment determinations are left to the sound discretion of the district court. *Mason v. Lister*, 562 F.2d 343, 345 (5th Cir. 1977).

In determining whether a default judgment should be entered against a defendant, courts have developed a two-part analysis. *First*, courts must consider whether entry of default judgment is appropriate under the circumstances. *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Factors relevant to this inquiry include:

> (1) whether material issues of fact exist; (2) whether there has been substantial prejudice; (3) whether the grounds for default are clearly established; (4) whether the default was caused by a good faith mistake or excusable neglect; (5) the harshness of a default judgment; and (6) whether the court would think itself obliged to set aside the default on the defendant's motion.

*Id. Second*, Courts must "assess the merits of the plaintiff's claims and find a sufficient basis in the pleadings for the judgment." *J & J Sports Prods., Inc. v. Guerrero*, No. 5:17-CV-92, 2018 WL 375391, at *1 (S.D. Tex. Jan. 11, 2018) (Marmolejo, J.) (citing *Nishimatsu Constr. Co. v. Hous. Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975). The entry of default means that Defendants are deemed to have admitted Plaintiff's well-pleaded factual allegations. *Nishimatsu Constr. Co.*, 515 F.2d at 1206. But the allegations in Plaintiff's first amended complaint must still comply with the sufficiency requirements of Rule 8 of the Federal Rules of Civil Procedure. *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 498 (5th Cir. 2015) (stating that in determining the sufficiency of the pleadings for purposes of a default judgment motion the court looks to case law on Rule 8).

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must "contain a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This requirement "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). By defaulting, the defendant is deemed to admit "the plaintiff's well-pleaded allegations of fact" and is not deemed to "admit allegations that are not well-pleaded or to admit conclusions of law." *Nishimatsu*, 515 F.2d at 1206. The factual allegations, assumed to be true, need only "be enough to raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555. Detailed allegations are not required, but "the pleading must present more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Finally, "a default judgment . . . establishes the defendant's liability. But it does not establish the amount of damages." *United States v. Shipco Gen., Inc.*, 814 F.2d 1011, 1014 (5th Cir. 1987). As a result "[i]f the court determines that default judgment should be granted, the court must also determine the appropriate amount of damages." *People's United Equipment Finance Corp. v. Northern Yankee, LLC*, No. H-17-3528, 2018 WL 4334056, at *2 (S.D. Tex. June 6, 2018). And, generally, damages should not be awarded without a hearing. *United Artists Corp.*, 605 F.2d at 857. At the hearing, it is the plaintiff's burden to provide an evidentiary basis for the damages he seeks. *BBVA USA v. Hall*, No. 5:19-CV-99, 2020 WL 9814212, at *1 (S.D. Tex. Dec. 18, 2020) (Saldaña, J.).

## III. ANALYSIS

### A. Is Default Judgment Appropriate?

In this case, the Undersigned finds the six *Lindsey* factors, outlined above, weigh in favor of granting default judgment. *First*, there are no material issues of fact in dispute as Defendants have failed to file any responsive pleadings in this case. *See Nishimatsu*, 515 F.2d at 1206 ("The defendant, by his default, admits the plaintiff's well pleaded allegations of fact."). *Second*, there is substantial prejudice to Plaintiff's interest in pursuing her rights resulting from Defendants' failure to respond. *See Insurance Co. of the West v. H & G Contractors, Inc.*, No. CIV.A. C-10-390, 2011 WL 4738197, at *1 (S.D. Tex. Oct. 5, 2011) (citing *Lindsey*, 161 F.3d at 893). *Third*, the grounds for default have been clearly established due to Defendants' failure to answer or defend. *See J & J Sports Prods., Inc.*, 2018 WL 375391 at *2. *Fourth*, there is no

evidence before the Court indicating that Defendants' silence is the result of a good-faith mistake or excusable neglect. *Id.* (citing *Lindsey*, 161 F.3d at 893). *Fifth*, "the harshness of default judgment is mitigated as time passes without an appearance or filing from an opposing party," which in this case has been over nine months. *Id.*; (*see also* Dkt. No. 1). *Sixth*, the Undersigned is unaware of any facts which would give rise to good cause to set aside the default if challenged by Defendants. *Id.*; *see also CJC Holdings v. Wright & Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992) (Upholding district court's grant of default judgment after defendant failed to respond to summons within forty days).

Therefore, because Defendants were properly served in this action and failed to answer or otherwise defend themselves, the grounds for default judgment are clearly established. (*See* Dkt. No. 5). Thus, the Undersigned finds that entry of default judgment is appropriate here.

### B. Is There a Sufficient Basis in the Pleadings?

Having found that entry of default judgment is appropriate here, the Undersigned must next assess whether the facts alleged in Plaintiff's first amended complaint, (Dkt. No. 6), establish a sufficient basis for relief.

### 1. Causes of Action Against Defendant Gurmail Singh

Plaintiff brings claims against Singh for negligence and negligence per se, gross negligence, and aiding and abetting liability. (Dkt. No. 6 at 6–10).

### (a) Negligence

A well-pleaded claim for negligence under Texas law must allege: "(1) a legal

duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach." *Firestone Steel Prods. Co. v. Barajas*, 927 S.W.2d 608, 613 (Tex. 1996). It is axiomatic that drivers of motor vehicles have a duty "to exercise the ordinary care a reasonably prudent person would exercise under the same circumstances to avoid foreseeable risk of harm to others." *Ciguero v. Lara*, 455 S.W.3d 744, 748 (Tex. App.—El Paso 2015). This includes the duty "to keep [one's] vehicle under control so as to avoid a collision with others[.]" *Choate v. Meredith*, 330 S.W.2d 548, 549 (Tex. App.—Texarkana 1959). Proximate cause requires both that the duty's breach be a cause-in-fact of the harm and that the harm be a foreseeable consequence of the breach. *Doe v. Boys Clubs of Greater Dallas, Inc.*, 907 S.W.2d 472, 477 (Tex. 1995).

Here, Plaintiff alleges "Defendant Singh had a duty to exercise the degree of care that a reasonable careful driver would use to avoid harm to others." (Dkt. No. 6 at 6). Plaintiff further alleges "Defendant breached his duty to [Plaintiff] when Singh . . . initiated the extremely dangerous act of driving recklessly." (*Id*.). Specifically, "Singh . . . failed to maintain an assured clear distance between the Kenworth and other vehicles on the road, failed to keep a proper lookout, and failed to maintain safe instrumentalities on the roadways", amongst 14 other acts and omissions. (*Id*. at 6–7). Finally, Plaintiff alleges "each of these acts and/or omissions . . . proximately caused the collision and injuries . . . Plaintiff suffered and will continue to suffer in the future." (*Id*. at 8).

These allegations plausibly establish Singh had a duty to Plaintiff, that he

9

breached that duty, and that Plaintiff suffered injuries as a proximate result of that breach. Through Singh's default, he is deemed to have admitted these well-pleaded allegations. *Nishimatsu Constr. Co.*, 515 F.2d at 1206. Therefore, the Undersigned finds there is a sufficient basis for relief on Plaintiff's negligence claim against Singh.

### (b) Negligence Per Se

"Negligence per se is a common-law doctrine in which a duty is imposed on a standard of conduct created by a penal statute rather than on the reasonably prudent person test used in pure negligence claims." *Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex. 1997). But "where a statute incorporates the ordinarily prudent person standard, negligence per se does not apply because the statute does not establish a specific standard of conduct different from the common-law standard of ordinary care."[4]

Here, Plaintiff alleges Singh's violation of § 545.401 of the Texas Transportation Code amounts to negligence per se. (Dkt. No. 6 at 8). A person violates § 545.401 "if the person drives a vehicle in wil[l]ful or wanton disregard for the safety of persons or property." Tex. Transp. Code § 545.401(a). Nevertheless, while § 545.401 requires a person to act with "wil[l]ful or wanton disregard" to perfect an offense, it "does not impose a special standard of care, and thus may not support negligence per se."[5]

---

[4] *Supreme Beef Packers, Inc. v. Maddox*, 67 S.W.3d 453, 456 (Tex. App.—Texarkana 2002, pet. denied*); see also Waring v. Wommack*, 945 S.W.2d 889, 891 (Tex. App.—Austin 1997) (holding that violation of § 545.152 for failing to yield to oncoming traffic does not constitute negligence per se because it "comes within the class of statutes in which the common-law standard of the reasonably prudent man must be used").

[5] *Fret v. Melton Truck Lines, Inc.*, Civ. No. SA-15-CV-00710-OLG, 2016 WL 10590158, at *3 (W.D. Tex. Nov. 29, 2016) (citing *Freudiger v. Keller*, 104 S.W.2d 294, 297 (Tex. App.—Texarkana 2003)), *rev'd in*

Accordingly, because violations of § 545.401 cannot amount to negligence per se, the Undersigned finds there is no sufficient basis for relief on Plaintiff's negligence per se claim against Singh.

### (c) Gross Negligence

Under Texas law, gross negligence means an act or omission:

(A) which when viewed objectively from the standpoint of the actor at the time of its occurrence involves an extreme degree of risk, considering the probability and magnitude of the potential harm to others; and

(B) of which the actor has actual, subjective awareness of the risk involved, but nevertheless proceeds with conscious indifference to the rights, safety, or welfare of others.

Tex. Civ. Prac. & Rem. Code § 41.001(11). Gross negligence consists of both objective and subjective elements. *U-Haul Int'l, Inc. v. Waldrip*, 380 S.W.3d 118, 137 (Tex. 2012). Under the objective element, extreme risk is not a remote possibility or high probability of minor harm, "but rather the likelihood of the plaintiff's serious injury." *Id*. The subjective element requires that the defendant knew about the risk, but its acts or omissions demonstrate indifference to the consequences of its acts. *Id*.

Here, Plaintiff expressly alleges Singh was grossly negligent. (Dkt. No. 6 at 8–10). Plaintiff lists numerous acts and omissions which are deemed admitted by Singh by his default. (Dkt. No. 6 at 9; *see also* Dkt. No. 6 at 7–8). Plaintiff further alleges "each of these acts and/or omissions, whether taken singularly or in any combination

---

*part on other grounds*, 706 F. App'x 824 (5th Cir. 2017); *E.g., Salas v. United States*, 667 F. Supp. 3d 380, 387 (W.D. Tex. 2023); *Agee v. Hartford Accident & Indem. Co.*, No. 3:22-CV-1697-G, 2023 WL 4595195 AT *6 (N.D. Tex. July 18, 2023); *Ordonez v. Ausby*, No. EP-21-CV-00077-DCG, 2023 WL 310442 (W.D. Tex. Jan. 18, 2023) (citing *Williams v. Mutia*, No. 01-19-00340-CV, 2021 WL 3729312, at *7 (Tex. App.—Houston [1st Dist.] Aug. 24, 2021) (concluding same).

constitutes . . . gross negligence." (Dkt. No. 6 at 8). The Texas Supreme Court has held the existence of gross negligence may result from a combination of negligent acts or omissions. *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 922 (Tex.1981). Finally, Plaintiff alleges Singh's "acts and omissions . . . when viewed objectively . . . involved an extreme degree of risk," and Singh knew of that risk but was consciously indifferent to Plaintiff's safety. (Dkt. No. 6 at 9).

These allegations demonstrate facts "that, if proved, would show a case of gross negligence." *Faulkner v. Kleinman*, 158 S.W.2d 891, 892 (Tex. App.—Austin 1942, no writ). Therefore, the Undersigned finds there is a sufficient basis for relief on Plaintiff's negligence claim against Singh.

### (d) Aiding and Abetting Liability

Plaintiff's first amended complaint also alleges Singh is liable for aiding and abetting. (Dkt. No. 6 at 10). However, "this Court is bound by the Fifth Circuit's . . . holding[6] that Texas does not recognize a civil cause of action for aiding and abetting." *Young Innovations, Inc. v. Dental Health Prod., Inc.*, No. CV 4:18-01726, 2019 WL 13211665 at *3 (S.D. Tex. Aug. 8, 2019) (Atlas, J.). The Undersigned shares the opinion of district judges in the Southern District of Texas "that it is inappropriate for this [C]ourt to recognize [an aiding and abetting] claim when the Texas Supreme Court has not yet done so."[7] Accordingly, the Undersigned finds there is no sufficient

---

[6] In *In re DePuy Orthopaedics, Inc., Pinnacle Hip Implant Prod. Liab. Litig.*, 888 F.3d 753, 781 (5th Cir. 2018), the Fifth Circuit noted the "Texas Supreme Court 'has not expressly decided whether Texas recognizes a cause of action for aiding and abetting,'" *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214 (Tex. 2017), and a federal court "[w]hen sitting in diversity . . . exceeds the bounds of its legitimacy in fashioning novel causes of action not yet recognized by the state courts."
[7] *Nix v. Major League Baseball, Off. of the Comm'r of Baseball*, No. CV H-21-4180, 2022 WL 2118986 (S.D. Tex. June 13, 2022*), aff'd and remanded sub nom. Nix v. Major League Baseball*, 62 F.4th 920

basis for relief on Plaintiff's aiding and abetting claim against Singh.

### 2. Causes of Action Against Defendants A & T and BHP

Plaintiff brings claims against A & T and BHP for vicarious liability, negligence, gross negligence, and aiding and abetting liability. (Dkt. No. 6 at 10–18).

### (a) Vicarious Liability Based on *Respondeat Superior*[8]

"Under the theory of *respondeat superior*, . . . an employer may be vicariously liable for the negligent acts of its employee if the employee's actions are within the course and scope of his employment." *Goodyear Tire & Rubber Co. v. Mayes*, 236 S.W.3d 754, 757 (Tex. 2007). "[P]roving an employer's vicarious liability for a worker's negligence involves a two-step process." *Painter v. Amerimex Drilling I, Ltd.*, 561 S.W.3d 125, 138 (Tex. 2018). First, the worker must be shown to have been an employee at the time of the alleged conduct. *Id*. And second, that employee must have been acting within the course and scope of his employment at the time. *Id*.

Here, Plaintiff alleges:

> The Defendants' truck involved in the incident was to transport freight. Defendant Singh, a driver employed by A & T and BHP, was engaged in transporting the freight for the use and benefit of A & T and BHP.

> [ . . . ]

---

(5th Cir. 2023), *cert. denied*, 144 S. Ct. 165, 217 L. Ed. 2d 62 (2023) (Rosenthal, J.); *Taya Agricultural Feed Mill Co. v. Byishimo*, Case No. H-21-3088, 2022 WL 103557, at *4 (S.D. Tex. Jan. 11, 2022) (Rosenthal, J.); *Garcia v. Vasilia*, No. CV H-17-1601, 2019 WL 4105559 at *11 (S.D. Tex. Aug. 29, 2019) (Miller, J.); *Young Innovations, Inc.*, 2019 WL 13211665 at *3 (Atlas, J.).

[8] The Undersigned notes that, under Texas law, vicarious liability based on *respondeat superior* and direct liability based on negligent hiring theories are sometimes mutually exclusive modes of recovery. *See*, *e.g.*, *Rosell v. Cent. W. Motor Stages, Inc.*, 89 S.W.3d 643, 657 (Tex. App.—Dallas 2002). However, this rule only applies where the plaintiff alleges ordinary negligence and the defendant-employer stipulates to its vicarious liability. *See*, *e.g.*, *id*. at 654; *Williams v. McCollister*, 671 F. Supp. 2d 884, 888 (S.D. Tex. 2009). Here, Plaintiff alleges gross negligence and, regardless, neither A & T or BHP has stipulated to vicarious liability. Therefore, Plaintiff may claim A & T and BHP's direct liability in addition to its vicarious liability, not solely in the alternative. *See Williams*, 671 F. Supp. 2d at 888.

> At the time of the events complained of herein, Singh was acting as an employee, statutory employee, co-employee, representative and/or agent of Defendants A & T and BHP.
>
> [ . . . ]
>
> At all material times, . . . A & T and BHP each exercised control over Singh's work and the means, methods, or details of Singh's driving work, the activity of which caused [Plaintiff's] injuries and damages.

(Dkt. No. 6 at 3–4). Further:

> At the time of the occurrence of the act in question and immediately prior thererto, Singh was within the course and scope of employment for Defendants A & T and BHP.

(*Id.* at 10). As stated, in evaluating the sufficiency of a complaint, as here, the Court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted). A complaint is factually sufficient, i.e., its claims are plausible, "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

These allegations allow the Court to find Singh, as A & T and BHP's driver, was plausibly an employee of A & T and BHP and acting in the course and scope of his employment at the time of the accident. Moreover, through their default, A & T and BHP are deemed to have admitted those allegations that place it in the shoes of its driver. *Nishimatsu Constr. Co.*, 515 F.2d at 1206.

Therefore, the Undersigned finds there is a sufficient basis for relief on Plaintiff's vicarious liability claim against A & T and BHP.

**(b) Negligence**

Regarding Plaintiff's negligence claim against A & T and BHP, Plaintiff alleges:

> Defendants A & T and BHP were individually and concurrently jointly negligent in one or more of the following respects:
>
> [N]egligent hiring . . . negligent entrustment . . . negligent qualifications . . . negligent vehicle monitoring . . . negligent retention . . . negligent management . . . negligent contracting . . . negligent maintenance . . . negligent training . . . negligent operating; and . . . negligent supervision.

(Dkt. No. 6 at 11). To begin, the Undersigned notes this type of catchall "shotgun approach"[9] to pleading has resulted in sanctions in Texas courts. *Nickerson v. T.D.C.J.-I.D.*, No. 09-06-197CV, 2007 WL 3306703 (Tex. App.—Beaumont Nov. 8, 2007). In addition, the Undersigned notes this portion of Plaintiff's first amended complaint includes copious legal conclusions as opposed to factual allegations, as well as duplicate allegations of vicarious liability. (Dkt. No. 6 at 11–17). While disorganized, in order to fully evaluate Plaintiff's negligence claim against A & T and BHP, the Undersigned has exhaustively sifted through the allegations in this portion of Plaintiff's first amended complaint.

As stated, a well-pleaded claim for negligence under Texas law must allege: "(1) a legal duty owed by one person to another; (2) a breach of that duty; and (3) damages proximately resulting from the breach." *Firestone*, 927 S.W.2d at 613.

Here, despite Plaintiff's listing of numerous negligence theories, Plaintiff

---

[9] *In re Apache Corp.*, 61 S.W.3d 432, 436 (Tex. App.—Amarillo 2001) ("Through 'shotgun pleading,' the litigant offers numerous contentions hoping that at least one will find its target. Though of long existence, the practice is not favored.").

alleges only one cognizable legal duty throughout this portion of Plaintiff's first amended complaint:

> Defendants owed a duty to its other employees and to the general public to acquire the qualifications and competence of the drivers they hire, especially when agents are engaged in occupations that require skill or experience and that could be hazardous to the safety of others.

(Dkt. No. 6 at 12–13).[10] This duty is applicable to negligent hiring, retention and supervision claims.[11] As a result, because Plaintiff has not plead any additional, cognizable legal duties, and presented her other negligence theories in a blanket manner, the Undersigned finds there is not a sufficient basis in the pleadings to establish A & T and BHP's liability in regards to these claims.[12] (*Id.* at 11–17). Thus, the Undersigned will not consider Plaintiff's claims of: "negligent entrustment;" "negligent qualifications;" "negligent vehicle monitoring;" "negligent management;" "negligent contracting;" "negligent maintenance;" "negligent training;" and "negligent operating." (Dkt. No. 6 at 11).[13]

Returning to the cognizable legal duty Plaintiff alleges, "negligent hiring,

---

[10] In this portion of Plaintiff's first amended complaint, Plaintiff does also state: "Defendants' conduct and/or omissions, singularly or collectively, constitute a breach of duties owed by contract, statutory provisions, common law, and other authorities . . . " (Dkt. No. 6 at 14). However, "a mere general allegation of the existence of [a] duty without a statement of facts from which the duty arises is insufficient as being merely a statement of a legal conclusion." *Indep. E. Torpedo Co. v. Carter*, 131 S.W.2d 125, 126 (Tex. App.—Eastland 1939, no writ).

[11] *E.g.*, *Morris v. JTM Materials, Inc.*, 78 S.W.3d 28, 49 (Tex. App.—Fort Worth 2002); *Wise v. Complete Staffing Servs., Inc.*, 56 S.W.3d 900, 902 (Tex. App.—Texarkana 2001, no pet.); *Garcia v. Allen*, 28 S.W.3d 587, 592 (Tex. App.—Corpus Christi 2000, pet. denied).

[12] "The declaration, complaint, or petition must show the existence of a legal duty on the part of the defendant . . . It is insufficient to allege merely that the defendant negligently performed or failed to perform certain acts, whereby the injury was caused, without an allegation showing defendant's duty in the matter." *Indep. E. Torpedo Co.*, 131 S.W.2d at 125.

[13] *See also Fairdale Ltd. v. Sellers*, 651 S.W.2d 725, 726 (Tex.1982) (reversing default judgment and concluding that plaintiff's petition failed to state cause of action where petition contained no allegations of any duty owed to plaintiff by defendant or any allegation of breach of any duty).

16

retention, . . . and supervision claims are all simple negligence causes of action based on an employer's direct negligence rather than on vicarious liability." *De Hoyos v. C.R. England, Inc.*, No. 5:15-CV-60, 2016 WL 11575124 at *2 (S.D. Tex. Dec. 13, 2016) (Marmolejo, J.) (citing *Morris*, 78 S.W.3d at 49). And like all negligence actions, a plaintiff must demonstrate that the employer had a legal duty, that it breached that duty, and that the breach proximately caused Plaintiff's injury. *Id*. With this basic framework in place, the Undersigned now turns to Plaintiff's negligent hiring, retention and supervision claims.

Here, Plaintiff alleges A & T and BHP owed a cognizable legal duty to the general public, which includes Plaintiff, to acquire the qualifications and competence of the drivers they hire. (Dkt. No. 6 at 12–13). While Plaintiff has inartfully plead allegations regarding breach of this duty, the Undersigned notes in the context of a default judgment, Texas courts have held "a petition is sufficient if a cause of action reasonably may be inferred from what is stated in the petition, even if an element of the action is not specifically alleged." *Westcliffe, Inc. v. Bear Creek Const., Ltd.*, 105 S.W.3d 286, 292 (Tex. App.—Dallas 2003, no pet.). Regarding breach, Plaintiff alleges:

> A & T and BHP knew or should have known of Singh's incompetence, recklessness and dangerous proclivities as a truck driver;
>
> [ . . . ]
>
> A & T and BHP . . . knew or should have known that Singh was an unlicensed, incompetent, or reckless driver;
>
> [ . . . ]

17

> Information in Singh's background check would cause a reasonable employer to not hire him or was sufficient to put A & T and BHP on notice that hiring Singh would create a risk of harm to the public; [and]
>
> [ . . . ]
>
> As a result of Singh's previous driving habits, he was physically incapacitated or lacking in judgment or perception, all of which should have been known by A & T and BHP."

(Dkt. No. 6 at 13). "Yet, A & T and BHP ignored the hiring and training risk, all to the detriment of [Plaintiff] and other motorists." (*Id.* at 13). Finally, Plaintiff also alleges proximate causation. *See* (*id.* at 13) ("A & T and BHP's negligence proximately caused the collision, [Plaintiff's] severe injuries, mental anguish, and damages sustained by [Plaintiff]").

Based on these allegations the Undersigned finds a cause of action for negligent hiring, retention, and supervision "reasonably may be inferred." *Westcliffe*, 105 S.W.3d at 292. Therefore, the Undersigned finds there is a sufficient basis for relief on Plaintiff's negligence claim against A & T and BHP.

### (c) Gross Negligence

A corporation may be liable for gross negligence under Texas law, but only for its own conduct. *Mobil Oil Corp. v. Ellender*, 968 S.W.2d 917, 921 (Tex. 1998); *see also Finley v. Vermeer Mfg. Co.*, No. 18-CV-192, 2019 U.S. Dist. 2019 WL 5058901, at *5 (W.D. Tex. July 11, 2019) ("there must be clear and convincing evidence that [the corporate defendant] itself committed gross negligence."). A corporation itself commits gross negligence when it (1) authorizes or ratifies an agent's gross negligence, (2) commits gross negligence through the actions of a vice principal, or (3)

18

is grossly negligent in hiring an unfit agent. *Mobil Oil Corp.*, 968 S.W.2d at 921–22 (citing *Hammerly Oaks, Inc. v. Edwards*, 958 S.W.2d 387 (Tex. 1997)); *see also Phillips v. Super Servs. Holdings, LLC*, 189 F. Supp. 3d 640, 656 (S.D. Tex. 2016).

Here, Plaintiff dedicates three short paragraphs to this claim against A & T and BHP. (Dkt. No. 6 at 17–18). Due to this, Plaintiff's theory of corporate liability is not focused and unclear. (*Id.*). It appears, however, Plaintiff relies on a theory of authorization or ratification by A & T and BHP of Singh's gross negligence. (*Id.* at 17). The Undersigned's assessment is based on Plaintiff's incorporation of the preceding section of her first amended complaint, (*id.* at 17), where Plaintiff alleges: "Defendants committed gross negligence through the actions and inactions of Singh," (*Id.* at 16). Specifically, Plaintiff alleges A & T and BHP "authori[zed] and/or tacitly ratif[ied] the grossly negligent acts of its trucker." (*Id.* at 16). Because these are the only factual allegations related to gross negligence that Plaintiff attributes to A & T and BHP, the Undersigned concludes Plaintiff's theory of corporate liability is based on A & T and BHP authorizing or ratifying their agent's, Singh's, gross negligence. *Mobil Oil Corp.*, 968 S.W.2d at 921–22.

Thus, while disorganized, the Undersigned finds a cause of action for gross negligence "reasonably may be inferred" based on A & T and BHP authorizing or ratifying Singh's gross negligence. *Westcliffe*, 105 S.W.3d at 292. Therefore, the Undersigned finds there is a sufficient basis for relief on Plaintiff's gross negligence claim against A & T and BHP.

**(d) Aiding and Abetting Liability**

19

As stated, regarding Singh, no aiding and abetting claim exists in Texas. *Depuy*, 888 F.3d at 781–82.

Accordingly, the Undersigned finds there is no sufficient basis for relief on Plaintiff's aiding and abetting claim against A & T and BHP.

### 3. Summary of Causes of Action with a Sufficient Basis for Relief in Plaintiff's Pleadings

In sum, the Undersigned finds there is a sufficient basis for relief in the pleadings as to Plaintiff's negligence and gross negligence claims against Defendant Singh, and Plaintiff's vicarious liability, negligence, and gross negligence claims against Defendants A & T and BHP.

Conversely, the Undersigned finds there is not a sufficient basis for relief in the pleadings as to Plaintiff's negligence per se and aiding and abetting claims against Defendant Singh, and Plaintiff's aiding and abetting claim against Defendants A & T and BHP.

### C. What is the Appropriate Amount of Damages?

The only remaining question is the amount of damages that is appropriate. The law governing what damages are recoverable is substantive, and therefore in a diversity case state law governs what damages are available for a given claim and the manner in which those damages must be proved. *Coursey v. Broadhurst,* 888 F.2d 338, 344 (5th Cir.1989) (per curiam).

In Texas, to recover damages, the plaintiff has the burden to prove by a preponderance of the evidence that damages claimed were actually suffered. *United Rentals North America, Inc. v. Evans*, 668 S.W.3d 627 (Tex. 2023). And a Texas "court

20

rendering a default judgment must hear evidence of unliquidated damages." *Holt Atherton Indus., Inc. v. Heine*, 835 S.W.2d 80 (Tex. 1992) (citing *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 731 (Tex. 1984).

Here, on March 15, 2023, the Undersigned issued an order setting an evidentiary hearing ("the hearing") on damages. (Dkt. No. 16). In the order, the evidentiary burdens related to each of Plaintiff's requests for damages were made clear, (*id.*), and on April 2, 2024, the hearing was held before the Undersigned. (Min. Ent. on Apr. 2, 2024).

As stated, because Plaintiff's counsel was unprepared at the hearing, the Court ordered Plaintiff, if she chose to do so, to supplement the evidence. (Dkt. No. 19). In response, on June 3, 2024, Plaintiff filed the oral deposition transcript of Melissa Guerra, Doctor of Chiropractic ("Dr. Guerra"). (Dkt. No. 25).

At the outset of the Undersigned's analysis of the appropriate amount of damages, the Undersigned notes Plaintiff's counsel has had every opportunity to put additional evidence before the Court and supplement the record. Despite these opportunities, however, in several instances it appears Plaintiff's counsel has simply chosen not to do so.

### 1. Apportionment of Non-Exemplary Damages

#### (a) Joint and Several Liability

Joint and several liability arises in tort claims based on the conduct of the

21

tortfeasors and the nature of the injury.[14] "If the independent tortious conduct of two or more persons is a legal cause of an indivisible injury, each person is jointly and severally liable for the recoverable damages caused by the tortious conduct."[15] Regarding vicarious liability, "vicarious liability is joint and several."[16]

Therefore, Singh, A & T, and BHP are jointly and severally liable for Plaintiff's requested non-exemplary damages based on Plaintiff's negligence claim against Singh and negligence and vicarious liability claims against A & T and BHP.

A discussion of Plaintiff's request for exemplary damages, which must be individualized[17], based on Plaintiff's gross negligence claims against Singh, A & T, and BHP follows the Undersigned's analysis of non-exemplary damages.

### 2. Economic Damages

Economic damages are those that compensate an injured party for lost wages, lost earning capacity, and medical expenses. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 763 (Tex. 2003).

### (a) Medical Care Expenses

### (i) Past Medical Care Expenses

---

[14] *CTTI Priesmeyer, Inc. v. K & O Ltd. P'ship*, 164 S.W.3d 675, 684 (Tex. App.—Austin 2005), *rev'd on other grounds by Elness Swenson Graham Architects, Inc. v. RLJ II-C Austin Air, LP*, 520 S.W.3d 145, 166 (Tex. App.—Austin 2017).
[15] Restatement (Third) of Torts: Apportionment of Liability § A18 (2000); *see also* Restatement (Third) of Torts: Apportionment of Liability § 10, cmt. b (2000) (explaining that joint torts are defined as those committed by multiple defendants acting in concert to cause indivisible injury).
[16] *Oney v. Crist*, 517 S.W.3d 882, 895 (Tex. App.—Tyler 2017), *review granted, judgment vacated, and remanded by agreement*, No. 17-0317, 2018 WL 11483411 (Tex. Apr. 27, 2018) (citing *AAMCO Transmissions, Inc. v. Bova*, 484 S.W.3d 520, 525 (Tex. App.—Houston [1st Dist.] 2016, no pet.)).
[17] *See* Tex. Civ. Prac. & Rem. Code § 41.006 which provides in actions involving two or more defendants, "an award of exemplary damages must be specific as to a defendant, and each defendant is liable only for the amount of the award made against that defendant."

To recover for past medical expenses, a plaintiff must prove that the expenses were necessary to treat the injury, were reasonable in amount, and the expenses were paid or incurred by or on behalf of the plaintiff. Tex. Civ. Prac. & Rem. Code § 41.0105; *Texarkana Mem'l Hosp*, 946 S.W.2d at 839–40. "Traditionally, expert testimony was the only acceptable means of proving the reasonableness and necessity of past medical expenses." *Rahimi v. United States*, 474 F.Supp.2d 825, 826 (N.D. Tex. 2006) (citing *Castillo v. American Garment Finishers Corp.*, 965 S.W.2d 646. 654 (Tex. App.—El Paso 1998, no pet.)). Following the enactment of Tex. Civ. Prac. & Rem. Code § 18.001 though, the Texas Legislature also permitted plaintiffs to submit affidavits to prove the necessity and reasonableness of medical expenses. *See id.* § 18.001.

However, the emerging consensus of district courts sitting in Texas is § 18.001 does not apply in federal court.[18] Hence, to meet her burden of presenting expert testimony, on June 3, 2024, Plaintiff filed the oral deposition transcript of Dr. Guerra. (Dkt. No. 25).

In Plaintiff's amended default judgment, (Dkt. No. 18), Plaintiff seeks a final default judgment against Defendants awarding:

---

[18] *Perez v. Tyczynski*, No. 5:21-CV-00109, 2023 WL 2020980 (S.D. Tex. Feb. 15, 2023) (Saldaña, J.) ("the Court reaches the same conclusion either under its "direct collision" analysis or under the *Erie* doctrine: § 18.001 has no application in federal court. If Plaintiff wishes to provide opinion evidence on the necessity or reasonableness of medical records already admitted, he must do so through witness testimony at trial."); *Rivera v. Autotransportes Fronterizos, M.G., S.A. De C.V.*, No. 7:21-CV-00428, 2022 WL 3069290 (S.D. Tex. Aug. 3, 2022); *Escobar v. Duke Realty Corp.*, 2021 WL 1326285, at *3 (S.D. Tex. April 8, 2021); *Jones v. QuikTrip Corp.*, No. 3:19-CV-2671-D, 2020 WL 6149967, at *2 (N.D. Tex. Oct. 20, 2020); *Espinoza v. State Farm Mut. Auto. Ins. Co.*, No. 7:19-cv-00299, 2020 WL 4333558, at *7 (S.D. Tex. July 28, 2020) (collecting cases); *Aakpan v. United States*, No. CV H-16-2981, 2018 WL 398229 at *3 (S.D. Tex. Jan. 12, 2018); *Haygood v. De Escabedo*, 356 S.W.3d 390, 397 (Tex. 2011).

      (1)  Medical  care  expenses  incurred  in  the  past  in  the  amount  of
          **$19,915.00.**

(Dkt. No. 18). Here, Plaintiff has submitted billing records from: (1) Open MRI del

Norte Medical; (2) Laredo Family Health Center; and (3) the Interventional Treatment

Institute. (Dkt. No. 20 at 1). The Open MRI del Norte Medical billing records reflect a

balance due of $4,587.00, (*see* Dkt. No. 20-2 at 2); the Laredo Family Health Center

billing records reflect a balance due of $9,953.00, (*see* Dkt. No. 20-3 at 2); and the

Interventional Treatment Institute invoice reflects a balance due of $5,735.00, [19] (*see*

Dkt. No. 20-4 at 2). The total of these three balances is $20,275.00.

      In awarding relief, "[a] default judgment must not differ in kind from, or exceed

in amount, what is demanded in the pleadings." Fed. R. Civ. P. 54(c). In other words,

the relief requested in a live pleading limits the relief available in a default judgment.

*See Sapp v. Renfroe*, 511 F.2d 172, 176 n.3 (5th Cir. 1975). Thus, while it appears

Plaintiff's counsel has miscalculated Plaintiff's past medical care expenses, Plaintiff is

limited to the $19,915.00 figure requested in her amended default judgment, (Dkt. No.

18).

      In  her  deposition  testimony,  Dr.  Guerra  testified  she  is  the  contracted

chiropractor for Laredo Family Health Center. (Dkt. No. 25-1 at 2). Dr. Guerra further

testified she began treating Plaintiff three days after the June 7, 2022, collision. (*Id.*).

Plaintiff had 16 total office visits, and Dr. Guerra testified the charges for those visits,

totaling $9,953.00, were reasonable and necessary. (*Id.* at 3–4). Dr. Guerra further

---

[19] The Undersigned notes that while the affidavit of the custodian of medical/billing records reflects a
balance due on the account of $15,790.00, the itemized invoice for the Interventional Treatment
Institute only indicates charges of $5,375.00. (*Compare* Dkt. Nos. 20-4 at 2 *with* 20-4 at 3).

testified she ordered Plaintiff's two MRI exams conducted by Open MRI del Norte Medical, totaling $4,587.00. (*Id.* a 4). Finally, Dr. Guerra testified Plaintiff's pain management treatment at the Interventional Treatment Institute, totaling $5,735.00, were also reasonable and necessary. (*Id.* at 6).

Therefore, the Undersigned recommends the district judge award Plaintiff $19,915.00 in past medical care expenses.

### (ii) Future Medical Care Expenses

To recover future medical expenses, a plaintiff must show there is a "reasonable probability" that the expenses resulting from the injuries he or she sustained will be necessary in the future and the reasonable cost of such care. *Rosenboom Mach. & Tool, Inc. v. Machala*, 995 S.W.2d 817, 828 (Tex. App.—Houston [1st dist.] 1999, pet. denied). A factfinder may determine reasonable future medical expenses based on: (1) the injuries suffered; (2) the medical care rendered before trial; (3) the injured party's progress toward recovery under the treatment received; and (4) the condition of the injured party at trial. *Id.* Although the preferred method is through expert medical testimony, no precise evidence is required to support an award for future medical costs. *Gunn v. McCoy*, 489 S.W.3d 75 (Tex. App.—Houston [14th Dist.] 2016), *judgment aff'd*, 554 S.W.3d 645 (Tex. 2018); *Saeco Elec. & Utility, Ltd. v. Gonzales*, 392 S.W.3d 803 (Tex. App.—San Antonio 2012). The determination of what amount, if any, to award in future medical expenses is within the factfinder's sound discretion.[20]

---

[20] *Diamond Offshore Services Limited v. Williams*, 510 S.W.3d 57 (Tex. App.—Houston [1st Dist.] 2015*), judgment rev'd on other grounds*, 542 S.W.3d 539 (Tex. 2018); *Finley v. P.G.*, 428 S.W.3d 229,

In Plaintiff's amended default judgment, (Dkt. No. 18), Plaintiff seeks a final default judgment against Defendants awarding:

> (2)  Medical care expenses that, in reasonable probability, Maryell Cavazos will incur in the future in the amount of **$250,000.00**.

(Dkt. No. 18). Here, although there is evidence to show that in all reasonable probability Plaintiff will require some medical care in the future, the evidence of the actual cost of such future medical care is minimal at best.

At the hearing, Plaintiff testified she was treated by Dr. Guerra at Laredo Family Health Center. (Hrg. at 9:24–25). After completing six weeks of treatment, Dr. Guerra referred Plaintiff for a pain management evaluation and discharged Plaintiff from further treatment, (Dkt. No. 20-3 at 34 and 37). At Plaintiff's pain management evaluation on July 22, 2022, Plaintiff received an epidural spinal injection, (Dkt. No. 20-4 at 3), which she testified "significantly helped." (Hrg. at 9:25–26). Regarding long-term treatment or follow-up visits, Plaintiff testified her discharge instructions from Dr. Guerra were "to go get more injections" if the pain returned. (*Id*. at 9:33–34). To date, Plaintiff has not had any additional treatment and testified she is self-treating at home by receiving massages from her husband and using over the counter medication. (*Id*. at 9:34–37). Plaintiff has considered receiving future injections in her back, but currently cannot afford to do so. (*Id*.).

Plaintiff's counsel stated at the hearing any future medical expenses are limited to "additional chiropractic treatment and any future injections that she would

---

233 (Tex. App.—Houston [1st Dist.] 2014, no pet.); *Rentech Steel, L.L.C. v. Teel*, 299 S.W.3d 155, 166 (Tex. App.—Eastland 2009, pet. dism'd); *Wal-Mart Stores Texas, LP v. Crosby*, 295 S.W.3d 346, 354 (Tex. App.—Dallas 2009, pet. denied).

need." (Hrg. at 9:57–59). Plaintiff testified that future medical expenses would be limited to injections and heating pads. (*Id.*).

The Undersigned notes Plaintiff has not put forth any evidence or testimony regarding Plaintiff's life expectancy. This is not fatal to Plaintiff's request for future medical care expenses, however, since a Plaintiff is not required to prove his or her life expectancy in order to recover future medical expenses. *Columbia Med. Ctr. of Las Colinas v. Bush ex rel. Bush*, 122 S.W.3d 835 (Tex. App.—Fort Worth 2003). But neither has Plaintiff provided expert testimony regarding the reasonable costs of Plaintiff's future medical expenses. *Rosenboom*, 995 S.W.2d at 828. And, finally, Plaintiff has not put forth any evidence regarding the frequency with which Plaintiff will need epidural spinal injections. Thus, while an award of future damages in a personal injury case is always "speculative," Plaintiff has done little to increase certainty here. *Crosby*, 295 S.W.3d at 354. Still, sifting through the evidence, the Undersigned proceeds aware "the reasonable value of future medical care may be established by evidence of the reasonable value of past medical treatment." *McDaniel v. Dindy*, 673 S.W.3d 24,38 (Tex. App.—Fort Worth 2023) (citing *Whole Foods Mkt. Sw., L.P. v. Tijerina*, 979 S.W.2d 768, 781 (Tex. App.—Houston [14th Dist.] 1998); *Thate v. Texas & P. Ry. Co.*, 595 S.W.2d 591, 601 (Tex. App.—Dallas 1980), *dismissed* (June 25, 1980).

In her deposition testimony, Dr. Guerra testified the costs associated with Plaintiff's office visits were reasonable and necessary. (Dkt. No. 25-1 at 3–5). Dr. Guerra also testified she "would highly recommend" Plaintiff receive chiropractic

treatment in the future for the injuries she sustained at "a minimum of four to six visits a year." (*Id.*). Dr. Guerra gave this recommendation in response to Plaintiff's counsel's proposal that Plaintiff may possibly live "into her 70s or 80s." (*Id.*).

Plaintiff's Laredo Family Health Center billing records indicate the cost for an office visit for an established patient is "[$]60.00." (*E.g.*, Dkt. No. 20-3 at 3). At the hearing, Plaintiff testified she is 32 years old. (Hrg. at 9:22–9:23). Assuming Plaintiff lives to be 70, Plaintiff will be alive 38 more years. Four visits per year, for 38 years, equals 152 visits. The total sum of 152 visits, valued at $60.00 per visit, is $9,120.00.

Plaintiff's Interventional Treatment Institute billing records indicate the cost of a visit for an epidural spinal injection is $4,250.00.[21] (Dkt. No. 20-4 at 1). Per Plaintiff's discharge instructions Plaintiff "may require future care if pain returns." (*Id.* at 9). As stated, Plaintiff has not put forth any evidence regarding the frequency with which Plaintiff will need epidural spinal injections.

Therefore, the Undersigned recommends the district judge award Plaintiff $20,120.00 in future medical care expenses. This figure represents $9,120.00 for future chiropractic office visits, $10,000.00 for future epidural spinal injections, and a $1,000.00 award for the costs associated with heating pads, ice packs, and other at home therapeutic care.

### (b) Loss of Earning Capacity

In a personal injury case, a plaintiff may recover damages for past and future

---

[21] This is the sum of the itemized charges for Plaintiff's July 23, 2022, visit. (Dkt. No. 20-4 at 3). It does not include the cost of Plaintiff's initial consultation on July 22, 2022, or follow up visit on September 3, 2022. (*Id.*).

loss of earning capacity as a result of the accident, as measured by loss of actual income the plaintiff was earning prior to the injury. *Koko Motel, Inc. v. Mayo*, 91 S.W. 3d 41, 51 (Tex. App.—Amarillo 2022, pet. denied); *Holcombe v. United States*, 584 F. Supp. 3d 225, 286 (W.D. Tex. 2022).

### (i)    Loss of Past and Future Earning Capacity

To support an award of damages for loss of past earning capacity, the plaintiff must introduce evidence sufficient to allow the fact-finder to reasonably measure earning capacity before injury in monetary terms. *Patschke v. United States*, No. A-11-CA-880-LY, 2013 WL 5441975 at *10 (W.D. Tex. Sept. 27, 2013) (citing *Bituminous Cas. Corp. v. Cleveland*, 223 S.W.3d 485, 491 (Tex. App.—Amarillo 2006). The plaintiff should introduce evidence of past earnings, time missed from work, and any other factors that illustrate the plaintiff's reduced ability to perform work in the past. *Charles v. Sanchez*, No. EP-13-CV-00193-DCG, 2015 WL 11439074 at *5 (W.D. Tex. Oct. 7, 2015) (citing *Ryan v. Hardin*, 495 S.W.2d 345, 350 (Tex. App.—Austin 1973, no writ); *McIver v. Gloria*, 169 S.W.2d 710, 712 (Tex. 1943)).

Similarly, to support an award of damages for loss of future earning capacity, the plaintiff must introduce evidence sufficient to allow the fact-finder to reasonably measure earning capacity in monetary terms. *Patschke*, 2013 WL 5441975 at *11 (W.D. Tex. Sept. 27, 2013) (citing *Bonney v. San Antonio Transit Co.*, 325 S.W.2d 117, 121 (Tex.1959)). To support an award for loss of future earning capacity, the plaintiff may introduce evidence of (1) past earnings; (2) the plaintiff's stamina, efficiency, and ability to work with pain; (3) the weaknesses and degenerative changes that will

naturally result from the plaintiff's injury; and (4) the plaintiff's work-life expectancy. *Id.* (citing *Gilbreath v. Hathaway*, 108 S.W.3d 365, 367 (Tex. App.—Beaumont 2003, pet. denied)).

In Plaintiff's amended default judgment, (Dkt. No. 18), Plaintiff seeks a final default judgment against Defendants awarding:

> (7) Loss of earning capacity sustained in the past in the amount of **$50,000.00**.

> (8) Loss of earning capacity that, in all reasonable probability, Maryell Cavazos will sustain in the future in the amount of **$250,000.00**.

(Dkt. No. 18). Here, at the hearing, Plaintiff testified she works as a Consumer Safety Inspector at the U.S. Department of Agriculture. (Hrg. at 9:22–9:23). She testified she is a salary worker and, in the past, received additional pay working overtime shifts. (*Id.* at 9:27–28). Plaintiff further testified she never stopped working, (*id.* at 9:39–9:40), but, since the accident, no longer works overtime shifts due to the cold, refrigerated environment exacerbating her back pain. (*Id.* at 9:28–20).

Turning to the sufficiency of the evidence related to this damages request, the Undersigned asked Plaintiff's counsel, "do you have any evidence of the Plaintiff's earning capacity before the injury, such as paystubs, W-2s, anything like that to help quantify how much she was making and how much she may have lost?" (Hrg. at 9:58–9:59). To which Plaintiff's counsel replied "no, your honor." (*Id.*). Although Plaintiff testified she is a salary worker, (*id.* at 9:54–55), there is no evidence in the record of what her salary is. In addition, at the hearing, Plaintiff testified she did not know how much money she is losing by no longer working overtime shifts. (*Id.* at 9:54–55).

Plaintiff testified she "could calculate it when [she] got home," but no additional evidence has been filed. (*Id.* at 9:58–59). Plaintiff's counsel also confirmed, at the hearing, he had no evidence to provide the Court relating to Plaintiff's monetary loss from no longer working overtime shifts. (*Id.*).

Accordingly, because Plaintiff has presented no evidence allowing the Court to reasonably measure Plaintiff's past and future earning capacity in monetary terms, the Undersigned recommends the district judge award no damages for loss of past and future earning capacity. As a federal employee, Plaintiff could have easily accessed and provided her W-2s, but for reasons unknown to the Undersigned Plaintiff has not done so. The Undersigned adds for the district judge, "no reason appears for [Plaintiff's] failure to introduce such proof." *Bonney*, 325 S.W.2d at 121.

### 2. Non-Economic Damages

Non-economic damages include compensation for pain, suffering, mental anguish, and disfigurement. *Golden Eagle Archery*, 116 S.W.3d at 763.

#### (a) Physical Pain

A factfinder may award damages for physical pain consciously suffered and experienced. *S. Pac. Transp. Co. v. Luna*, 730 S.W.2d 36, 38 (Tex. App.—Corpus Christi 1987).

#### (i) Past and Future Physical Pain

Evidence of past physical pain may be offered by testimony or other evidence, *Hospadales v. McCoy*, 513 S.W.3d 724, 742 (Tex. App.—Houston [1st Dist.] 2017, no pet.), and the law assumes physical pain results from a serious injury. *See City of*

*Tyler v. Likes*, 962 S.W.2d 489, 495–96 (Tex. 1997). Examples of serious, objective injuries that will support an award of damages for subjective complaints of pain include bone fractures, severe burns, and lacerations. *Enright v. Goodman Distribution, Inc.*, 330 S.W.3d 392, 398 (Tex. App.—Houston [14th Dist.] 2010) (citing *Hammett v. Zimmerman*, 804 S.W.2d 663, 666 (Tex. App.—Fort Worth 1991)

To prove future physical pain and suffering, the evidence must show there is a reasonable probability the injury will continue to affect the plaintiff in the future. *See Marvelli v. Alston*, 100 S.W.3d 460, 482–83 (Tex. App.—Fort Worth 2003, pet. denied). Damages for future pain may be extrapolated from the damages awarded for past pain. *Turner v. Duggin*, 532 S.W.3d 473, 485–86 (Tex. App.—Texarkana 2017, no pet.). Because physical pain and suffering is inherently subjective, and there are no guidelines to assess the monetary equivalent of such injuries, the factfinder has immense discretion in awarding such damages. *See Texarkana Mem'l Hosp.*, 946 S.W.2d at 841.

In Plaintiff's amended default judgment, (Dkt. No. 18), Plaintiff seeks a final default judgment against Defendants awarding:

> (3)  Physical pain sustained in the past in the amount of **$50,000.00**.

> (4)  Physical pain that, in reasonable probability, Maryell Cavazos will sustain in the future in the amount of **$250,000.00**.

(Dkt. No. 18). Here, in her deposition testimony, Dr. Guerra testified Plaintiff suffered a herniated disc. (Dkt. No. 25-1 at 4). Plaintiff's MRI exam of her lumbar spine confirms Dr. Guerra's diagnosis. (Dkt. No. 20-2 at 6).

At the hearing, Plaintiff testified immediately after the collision she felt a

"throb" in her back and neck. (Hrg. at 9:24–25). Three days later, at her initial visit with Dr. Guerra, Plaintiff's pain level was a six out of ten. (Dkt. No. 20-3 at 20). At Plaintiff's final visit with Dr. Guerra Plaintiff's pain level was a one out of ten. (*Id.*at 36). However, Plaintiff testified her back pain is "ongoing." (*Id.* at 9:28–30). Plaintiff testified her current pain level is a one out of ten, but, when aggravated, is as high as a three out of ten. (*Id.* at 9:36–37). Plaintiff described her back pain as right-sided and exacerbated by cold temperatures. (*Id.* at 9:34–37). Plaintiff's back pain is alleviated somewhat by receiving massages from her husband, using heating pads, and stretching. (*Id.* at 9:34–37). Plaintiff also uses a Transcutaneous Electrical Nerve Stimulation (TENS) Unit for relief 10 minutes daily. (*Id.* at 9:41–43).

In determining an adequate award for past and future physical pain, the Undersigned has taken a survey of Texas appellate court cases involving back pain resulting from motor vehicle collisions.[22] In addition, the Undersigned has consulted

---

[22] *Boddy v. Canteau*, 441 S.W.2d 906 (Tex. App.—San Antonio 1969), writ refused NRE (Oct. 1, 1969) ($6,000 past and future pain and suffering by man injured in automobile accident; treated for neck and back pain for 6 weeks by heat treatments, electronic treatments, and muscle relaxants; continues to have pain in neck and back up to time of trial; back hurts after sitting in chair for long periods of time; ability to drive automobile restricted; had not noticed any improvement in neck or back condition in several months.); *Lege v. Jones*, 919 S.W.2d 870 (Tex. App.—Houston [14th Dist.] 1996) (evidence supported award of $250,000 for pain and suffering of automobile accident victim who suffered a closed head injury (concussion), cervical whiplash injury and ruptured disc, extruded disc fragment, and central spinal cord injury); *Chem. Exp. Carriers, Inc. v. Nash*, 541 S.W.2d 670 (Tex. App.—Waco 1976) (finding award of $5,000 for past pain and mental anguish and award of $35,000 for future pain and mental anguish not excessive where Plaintiff has to have a completely extruded disc removed.); *Hospadales*, 513 S.W.3d at 742 (evidence supported award of $160,000 for past pain and suffering where immediately following accident motorist reported a high pain level in his neck, lower back, and right knee at emergency room, required steroid injections in his lower back and surgery to treat torn meniscus in his knee following the accident, and pain management specialist noted that motorist reported the pain was constant, throbbing with spasm, distressing and excruciating); *Austin v. Shampine*, 948 S.W.2d 900 (Tex. App.—Texarkana 1997), *reh'g overruled*, (July 1, 1997) *and application for writ of error filed*, (Aug. 27, 1997) (Award of $150,000 for past physical pain and mental anguish to motorist who was injured in automobile accident was supported by evidence that motorist suffered multiple painful injuries in accident, and was trapped in his vehicle, unable to exit and fearful of fire, for 30 minutes after accident, and by testimony that motorist continued to suffer constant knee

the American Law Reports' "Excessiveness or Adequacy of Damages Awarded for Injuries to Back, Neck, or Spine" database, focusing on Texas authority. 15 A.L.R.4th 294 (Originally published in 1982). The Undersigned notes Plaintiff has put no authority before the Court to support the amount of damages requested.

Therefore, based on the evidence before the Court, including Plaintiff's own testimony regarding her pain, the Undersigned recommends the district judge award Plaintiff $15,000.00 in damages for physical pain sustained in the past and that Plaintiff will sustain in the future.

### (b) Mental Anguish

Uncontroverted, objective evidence of injury does not always require mental anguish damages.[23] To support an award for mental anguish, there must be evidence of the existence of compensable mental-anguish damages and evidence to justify the amount awarded. *Bennett v. Grant*, 525 S.W.3d 642, 648 (Tex. 2017); *E.g., Chambers v. Starr*, 626 S.W.3d at 64 (Tex. App.—El Paso 2021).

A party must present either (1) direct evidence of the nature, duration, and severity of the mental anguish, thereby establishing a substantial interruption in the party's daily routine, or (2) circumstantial evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation, embarrassment, or anger. *McCaig v. Wells Fargo Bank (Texas), N.A.*, 788 F.3d 463 (5th Cir. 2015)

---

pain all day long, had not had a pain-free day since wreck, and that injury had significantly affected motorist's quality of life).

[23] *In re State Farm Mutual Automobile Insurance Company*, 483 S.W.3d 249 (Tex. App.—Fort Worth 2016); *Perez v. Arredondo*, 452 S.W.3d 847 (Tex. App.—San Antonio 2014); *Lanier v. Eastern Foundations, Inc.*, 401 S.W.3d 445 (Tex. App.—Dallas 2013).

(applying Texas law). Direct evidence for claimants seeking mental anguish damages may be in the form of the claimants' testimony, third-party testimony, or expert testimony. *Chambers*, 626 S.W.3d at 64. The lack of such evidence justifies close judicial scrutiny, especially when it is readily available to the claimants. *Id.*

Finally, the duration of the mental anguish is an important consideration in considering a proper damages award. *Sanchez v. Balderrama*, 546 S.W.3d 230 (Tex. App.—El Paso 2017).

### (i) Past and Future Mental Anguish

In Plaintiff's amended default judgment, (Dkt. No. 18), Plaintiff seeks a final default judgment against Defendants awarding:

(5)  Mental anguish sustained in the past in the amount of **$50,000.00**.

(6)  Mental anguish that, in reasonable probability, Maryell Cavazos will sustain in the future in the amount of **$250,000.00**.

(Dkt. No. 18). Here, at the hearing, Plaintiff testified the collision was "scary." (Hrg. at 9:23–24). Plaintiff also described the collision as "traumatizing," but further testified she continued to drive the same route for nine months, albeit more cautiously. (*Id.* at 9:43–9:47). When asked to explain her trauma, Plaintiff responded "it's just very upsetting." (*Id.* at 9:47–9:48). Plaintiff has had no nightmares or panic attacks since the collision. (*Id.* at 9:49–9:50). Plaintiff's counsel argued future mental anguish damages should be awarded because Plaintiff continues to work in the same industry and in the same area. (*Id.* at 10:00–10:03).

Based on the foregoing, the Undersigned is of the opinion Plaintiff's evidence is insufficient to justify the amount of mental anguish damages requested. *See*

*Anderson v. Durant*, 550 S.W.3d 605 (Tex. 2018) (Generalized, conclusory descriptions of how an event affected a person are insufficient evidence on which to base mental anguish damages.). However, because Plaintiff testified to experiencing some degree of distress and trauma in the aftermath of the collision, the Undersigned recommends the district judge award Plaintiff $1,000.00 in damages for mental anguish sustained in the past and that Plaintiff will sustain in the future.

### (c) Physical Impairment

In a personal injury case, a plaintiff can recover damages for past and future physical impairment. *Blankenship v. Mirick*, 984 S.W. 2d 771, 777 (Tex. App.—Waco 1999, pet. denied). Physical impairment, sometimes called loss of enjoyment of life, encompasses the loss of the injured party's former lifestyle. *Enright*, 330 S.W.3d at 402. Physical impairment encompasses the inability to participate in sports, hobbies, or other recreational activities that comprised part of the injured party's former lifestyle. *See, e.g., Katy Springs & Mfg., Inc. v. Favalora*, 476 S.W.3d 579, 599 (Tex. App.—Houston [14th Dist.] 2015) (inability to exercise and care for child).

To receive physical impairment damages, the plaintiff must prove that the effect of his physical impairment extends beyond any impediment to his earning capacity and beyond any pain and suffering to the extent that it produces a separate and distinct loss that is substantial and for which he should be compensated. *Id*. at 599 That is, the plaintiff must show that (1) he incurred injuries that are distinct from, or extend beyond, injuries compensable as pain and suffering, loss of earning capacity, or other damage elements and (2) these distinct injuries have had a

"substantial" effect. *Gen. Motors Corp. v. Burry*, 203 S.W.3d 514, 554–55 (Tex. App.—Fort Worth 2006).

Because impairment damages are inherently speculative, factfinders have discretion in determining such awards. *See Ononiwu v. Eisenbach*, 624 S.W.3d 37, 44 (Tex. App.—Houston [1st Dist.] 2021).

### (i) Past and Future Physical Impairment

In Plaintiff's amended default judgment, (Dkt. No. 18), Plaintiff seeks a final default judgment against Defendants awarding:

(9)  Physical impairment sustained in the past in the amount of **$50,000.00**.

(10) Physical impairment that, in reasonable probability, Maryell Cavazos will incur in the future in the amount of **$250,000.00**.

(Dkt. No. 18). Here, at the hearing, Plaintiff testified her injuries have impeded her ability to engage in activities she previously enjoyed. (Hrg. 9:26–9:28). Prior to her injuries, Plaintiff testified she "used to be very active," attending fitness classes daily for four to five years and practicing yoga. (*Id.*; Hrg. at 9:49–9:53). Plaintiff would also run long distances four to five days a week with her brother. (Hrg. at 9:49–9:53). Plaintiff testified she now unable to run long distances without pain and is limited to brief jogs and speed walking. (*Id.*)

In addition, Plaintiff has a young daughter and testified she can no longer lift the child or the child's car seat without feeling discomfort. (*Id.* at 9:28–9:30; *id.* at 9:49–9:53). Plaintiff's husband corroborated Plaintiff's difficulties, (*id.* at 9:20–9:23), and Plaintiff now relies more on her husband for assistance, (*id.* at 9:28–9:29).

As with Plaintiff's award for past and future physical pain, in determining an adequate award for past and future physical impairment, the Undersigned has taken a survey of Texas appellate court cases involving herniated discs resulting from motor vehicle collisions.[24] The Undersigned notes Plaintiff testified prior to the collision she had no back pain. (Hrg. at 9:54–9:55). Further, Plaintiff had never been told she had a herniated disc in her spine. (*Id.*).

Therefore, based on a preponderance of the evidence relating to Plaintiff's current ability to perform past activities, the Undersigned recommends the district judge award Plaintiff $15,000.00 in damages for physical impairment sustained in the past and that Plaintiff will sustain in the future.

### (d) Disfigurement

A personal injury plaintiff may recover damages for past and future disfigurement. *Wal-Mart Stores v. Tinsley*, 998 S.W.2d 664, 673 (Tex. App.—Texarkana 1999, pet. denied), which is recognized as a separate element of recovery

---

[24] *Barnhart v. Morales*, 459 S.W.3d 733 (Tex. App.—Houston [14th Dist.] 2015) (affirming, on a challenge to the sufficiency of the evidence in a case where Plaintiff suffered two herniated discs, a past physical impairment award of $15,000.00 and future physical impairment award of $20,000.00); *McGee v. Tatum*, No. 05-21-00303-CV, 2022 WL 17248174 (Tex. App.—Dallas Nov. 28, 2022) (affirming, on a challenge to the sufficiency of the evidence in a case where Plaintiff suffered a herniated disc, a past physical impairment award of $8,000.00 and future physical impairment award of $12,000.00); *Ononiwu*, 624 S.W.3d at 43–47 (affirming a zero damages award for physical impairment, where Plaintiff suffered two herniated discs, based on the minor nature of accident and Plaintiff's acknowledgment he did not know how long his discs had been herniated); *Thomas v. Ortiz*, No. 13-22-00534-CV, 2023 WL 6886130 (Tex. App.—Corpus Christi Oct. 19, 2023) (affirming, on a challenge to the sufficiency of the evidence in a case where Plaintiff suffered several herniated discs, a future physical impairment award of $60,000.00); *Lara v. Bui*, No. 01-21-00484-CV, 2023 WL 2249205 (Tex. App.—Houston [1st Dist.] Feb. 28, 2023), review denied (Aug. 25, 2023) (citing in a footnote Plaintiff's trial court award of $13,512.00 for future physical impairment in a case where Plaintiff suffered two herniated discs); *Swearinger v. Guajardo*, No. 05-15-00202-CV, 2016 WL 4162785 (Tex. App.—Dallas Aug. 5, 2016) (affirming, on a challenge to the sufficiency of the evidence in a case where Plaintiff suffered a severe disc herniation, a past physical impairment award of $150,000.00 and future physical impairment award of $50,000.00).

from pain and suffering, mental anguish, and loss of earning capacity. *Goldston Corp. v. Hernandez*, 714 S.W.2d 350, 352–53 (Tex. App.—Corpus Christi 1986, writ ref'd n.r.e.). The term disfigurement is "defined as that which impairs or injures the beauty, symmetry, or appearance of a person or thing or that which renders unsightly, misshapen, imperfect, or deformed in some manner." *Goldman v. Torres*, 341 S.W.2d 154, 160 (Tex. 1960). Disfigurement includes contorted limbs and other deformities. *Baptist Mem'l Hosp. Sys. v. Smith*, 822 S.W.2d 67, 80 (Tex. App.—San Antonio 1981, writ denied) (overruled in part on other grounds). Such damages are also available for future disfigurement, which relates to recovery for future embarrassment caused by the disfigurement. *Holcombe*, 584 F. Supp. 3d at 288–89.

### (i) Past and Future Disfigurement

In Plaintiff's amended default judgment, (Dkt. No. 18), Plaintiff seeks a final default judgment against Defendants awarding:

> (11) Disfigurement sustained in the past in the amount of **$50,000.00**.
>
> (12) Disfigurement that, in reasonable probability, Maryell Cavazos will incur in the future in the amount of **$250,000.00.**

(Dkt. No. 18). Here, at the hearing, the Undersigned asked Plaintiff "do you have any disfigurement at all, scars, or anything from this accident?" (Hrg. at 9:52–9:53). To which Plaintiff replied "no, I don't." (*Id.*). When the Undersigned asked Plaintiff's counsel for his argument in support of $300,000.00 for Plaintiff's disfigurement, Plaintiff's counsel stated, "the herniated disc," without further explanation. (Hrg. at 10:02–10:03). The Undersigned notes that cases in which damages for disfigurement are awarded for back injuries typically involve compensation for scarring suffered as

a result of back surgery. *Durham Transp. Co. v. Beettner*, 201 S.W.3d 859, 869 (Tex. App.—Waco 2006) (collecting cases). The record does not indicate Plaintiff has had back surgery or will require back surgery in the future.

Accordingly, because Plaintiff testified she has no scarring or disfigurement, the Undersigned recommends the district judge award no damages for disfigurement.

### 3. Exemplary Damages

Texas allows an award of exemplary damages if the party proves that the harm for which the party seeks recovery of exemplary damages results from gross negligence. Tex. Civ. Prac. & Rem. Code § 41.008. The Civil Practice and Remedies Code limits the amount of exemplary damages which a court may award. *Id.* The exemplary damages are capped at the greater of $200,000, or two times the amount of economic damages, plus an amount equal to any noneconomic damages found by the factfinder, not to exceed $750,000. *Id.*

Section 41.010 instructs the court to consider the purpose of exemplary damages before making an award. *Id.* at § 41.010. Exemplary damages function to deter and punish. *Ratner v. Sioux Natural Gas Corp.*, 719 F.2d 901, 804 (5th Cir. 1983). The amount awarded must be reasonably proportioned to actual damages, though no set ratio exists for measuring reasonableness. *Alamo Nat'l Bank v. Kraus*, 616 S.W.2d 908, 910 (Tex. 1981). In determining the reasonableness of an award, Texas courts consider the following six factors:

> (1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, 94) the situation and sensibilities of the parties concerned, and (5) the extent to which such conduct offends a public sense of justice and propriety.

*Id*. Exemplary damages are "presumptively reasonable" if the award is within the statutory limits. *Peco Const. Co. v. Guajardo*, 919 S.W.2d 736, 742 (Tex. App.—San Antonio 1996, writ denied).

### (a) Apportionment

It is Texas policy that "the punishment imposed through exemplary damages is to be directed at the wrongdoer." *Fairfield Ins. Co. v. Stephens Martin Paving, LP*, 246 S.W.3d 653, 667 (Tex. 2008) (citing Tex. Civ. Prac. & Rem. Code § 41.006 which provides in actions involving two or more defendants, "an award of exemplary damages must be specific as to a defendant, and each defendant is liable only for the amount of the award made against that defendant.").

In Plaintiff's amended default judgment, (Dkt. No. 18), Plaintiff seeks a final default judgment against Defendants awarding:

(13) Exemplary damages against the Defendants in the sum of **$100,000.00.**

(Dkt. No. 18). Here, at the hearing, Plaintiff's counsel clarified Plaintiff is not requesting any exemplary damages from Singh, despite Plaintiff's claim of gross negligence against Singh, and is only requesting $50,000.00 each from A & T and BHP. (Hrg. at 10:06–10:07).

### (b) Analysis

As stated earlier in this report and recommendation, the Undersigned finds there is a sufficient basis for relief in the pleadings as to Plaintiff's gross negligence claim against A & T and BHP for "authorizing and/or tacitly ratifying the grossly

negligent acts of [Singh]." (Dkt. No. 6 at 16). However, "to award punitive damages against [A & T and BHP]—the ultimate goal of any plaintiff asserting a gross negligence claim—there must be clear and convincing evidence that [A & T and BHP] [*themselves*] committed gross negligence by authorizing or ratifying the allegedly grossly negligent acts or omissions of [Singh]." *Finley*, 2019 WL 5058901, at *5 (citing *Mobil Oil Corp.*, 968 S.W.2d at 921) ("there must be clear and convincing evidence that [the corporate defendant] itself committed gross negligence.").

Here, Plaintiff's counsel has fallen far short of meeting Plaintiff's burden of proving by clear and convincing evidence A & T and BHP themselves committed gross negligence by authorizing or ratifying the grossly negligent acts or omissions of Singh. Indeed, Plaintiff's counsel has presented no evidence related to this claim. While Plaintiff's counsel did provide argument on exemplary damages at the hearing, (Hrg. at 10:04–10:10), the argument was limited to Defendant's gross negligence consisting of A & T and BHP "not maintaining insurance for Mr. Singh." (Hrg. at 10:06–07). There is not a sufficient basis in the pleadings for this argument. (*See* Dkt. No. 6). Further, even if the Undersigned considered this argument, Plaintiff's counsel stated on the record he has no evidence to support it. (Hrg. at 10:06–07). In sum, Plaintiff's counsel's argument at the hearing confirmed the Undersigned's assessment of the pleadings that Plaintiff's theory of corporate liability related to her gross negligence claim is not focused and unclear.

Accordingly, the Undersigned recommends the district judge award no exemplary damages.

## IV. RECOMMENDATION

For the foregoing reasons, the Undersigned **RECOMMENDS** Plaintiff's motion, (Dkt. No. 14), be **GRANTED** in part, **DENIED** in part, and Plaintiff's requested damages, (Dkt. No. 18), be **MODIFIED**, as follows.

The Undersigned **RECOMMENDS** Plaintiff's motion be **GRANTED** as it relates to:

> Plaintiff's negligence claim, (Dkt. No. 6 at 6–8), and gross negligence claim, (Dkt. No. 6 at 8–10), against Defendant Singh; and

> Plaintiff's vicarious liability claim, (Dkt. No. 6 at 10–11), negligence claim, (Dkt. No. 6 at 11–17), and gross negligence claim, (Dkt. No. 6 at 17–18), against Defendants A & T and BHP.

The Undersigned **RECOMMENDS** Plaintiff's motion be **DENIED** as it relates to:

> Plaintiff's negligence per se and aiding and abetting claims, (Dkt. No. 6 at 6–8 and 10), against Defendant Singh; and

> Plaintiff's aiding and abetting claim, (Dkt. No. 6 at 18), against Defendants A & T and BHP.

The Undersigned **RECOMMENDS** Plaintiff's requested damages, (Dkt. No. 18), be **MODIFIED.** The Undersigned **RECOMMENDS** awarding a total amount of $71,035.00 to Plaintiff collectible against Defendants Singh, A & T, and BHP as follows:

> (1) Medical care expenses incurred in the past in the amount of **$19,915.00.**

> (2) Medical care expenses that, in reasonable probability, Maryell Cavazos will incur in the future in the amount of **$20,120.00**.

> (3) Physical pain sustained in the past and that Plaintiff will sustain in

the future in the amount of **$15,000.00**.

(5) Mental anguish sustained in the past and that Plaintiff will sustain in the future in the amount of **$1,000.00**.

(6) Physical impairment sustained in the past and that Plaintiff will sustain in the future in the amount of **$15,000.00**.

## NOTICE TO PARTIES

The Clerk shall file this Report and Recommendation and transmit a copy to each party or counsel. Within **FOURTEEN (14) DAYS** after being served with a copy of the Report and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error*, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc).

**SIGNED** on this 12th day of July, 2024.

Christopher dos Santos
United States Magistrate Judge